92 N.Y.2d 1002 (1998)
707 N.E.2d 428
684 N.Y.S.2d 473
The People of the State of New York, Respondent,
v.
Rodney Cox, Appellant.
Court of Appeals of the State of New York.
Argued November 19, 1998
Decided December 17, 1998.
Frank J. Loss, New York City, and M. Sue Wycoff for appellant.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (Nicole Beder and John M. Castellano of counsel), for respondent.
Chief Judge KAYE and Judges BELLACOSA, CIPARICK and WESLEY concur; Judge LEVINE dissents and votes to reverse in an opinion in which Judge SMITH concurs.
*1003 MEMORANDUM.
The order of the Appellate Division should be affirmed.
On October 13, 1993, defendant was visiting Tanisha Brewster when her boyfriend, Eric Copeland, forced his way into her apartment. Once inside, Copeland, nicknamed "Bear" *1004 because of his size, told defendant to leave. When defendant refused, a dispute ensued and Copeland punched defendant twice, knocking him to the floor and prompting him to leave. After defendant departed, Copeland also left Brewster's apartment.
Later that day, defendant telephoned Brewster and arranged to stop by her apartment to retrieve the Walkman he had left behind. Upon his return to the apartment, defendant  now armed with a nine-millimeter automatic handgun  entered Brewster's bedroom. Minutes after defendant's arrival, Copeland also returned to the apartment, forcing his way inside when Brewster opened the door to admit a friend. Copeland was repeatedly told to leave but refused, demanding to know who else was in the apartment. Copeland and Brewster then went into her mother's bedroom, where a shouting match ensued. While Copeland and Brewster argued, defendant, still alone in Brewster's bedroom, loaded his handgun.
When Copeland and Brewster emerged from her mother's bedroom, Copeland began walking toward Brewster's bedroom. Brewster attempted to hold Copeland back, but he kicked and shoved her, forcing his way into the room. There, Copeland encountered defendant, standing in the corner of the room holding his automatic handgun. Although the two men at first talked calmly, the conversation deteriorated into an angry argument. After approximately 15 minutes, Copeland said to defendant: "What are you going to do, shoot me?" In response, defendant fired one fatal bullet at Copeland's head. Defendant was charged with murder in the second degree and criminal weapons possession. At defendant's jury trial, Supreme Court refused to charge the defense of justification to terminate a burglary (Penal Law § 35.20 [3]), and defendant was convicted. The Appellate Division affirmed, as do we.
A trial court must instruct a jury on the defense of justification "if on any reasonable view of the evidence, the fact finder might have decided that the defendant's actions were justified" (People v Padgett, 60 N.Y.2d 142, 145; CPL 300.10 [2]). Under Penal Law § 35.20 (3), a person in possession or control of  or licensed or privileged to be in  a dwelling or occupied building, who "reasonably believes that another person is committing or attempting to commit a burglary of such dwelling or building, may use deadly physical force upon * * * person when he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of burglary." As its legislative history makes clear, section 35.20 (3) "was intended *1005 to protect those individuals who suddenly find themselves the victim of an intrusion upon their premises by one bent on a criminal end" (People v Godfrey, 80 N.Y.2d 860, 862).
Here, even assuming that Copeland committed a burglary by entering Brewster's apartment with the intent to commit an assault (Penal Law § 140.20), the trial court did not err in refusing to charge justification. Viewed in the light most favorable to defendant, the evidence does not support defendant's argument that he reasonably believed deadly force was necessary to prevent Copeland from committing an assault (Penal Law § 35.20 [3]). A substantial period elapsed between the time Copeland forced his way into the apartment and the time defendant fired his weapon. During that period, defendant had ample opportunity to terminate the alleged burglary by means not requiring deadly force. Instead, defendant remained secreted in Brewster's bedroom, loading the nine-millimeter pistol he had brought with him, until he was discovered by Copeland. After a lengthy verbal exchange with Copeland, defendant fired the fatal bullet. On this record, no rational view of the evidence permits the inference that defendant was justified in shooting Copeland. Similarly, defendant's argument that he was denied effective assistance of counsel is without merit.
LEVINE, J. (dissenting).
We respectfully dissent. In this case, defendant requested that the trial court charge the jury on the justification defense authorizing the use of deadly force to prevent or terminate a burglary. The applicable section of the Penal Law provides:
"A person in possession or control of, or licensed or privileged to be in, a dwelling or an occupied building, who reasonably believes that another person is committing or attempting to commit a burglary of such dwelling or building, may use deadly physical force upon such other person when he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary (Penal Law § 35.20 [3])."
The elements of this justification, as pertinent to this case are: (1) the person asserting the defense was licensed or privileged to be in the dwelling premises at the time of the act; (2) that person reasonably believed that another person was committing a burglary at the premises; and (3) that person reasonably believed that the use of deadly force was necessary to terminate *1006 the commission of the burglary. Giving defendant the benefit of the most favorable view of the record, as we must (see, People v Steele, 26 N.Y.2d 526, 529), we conclude that there was evidence establishing each of the foregoing elements, requiring the justification defense to be submitted to the jury and disproved by the People beyond a reasonable doubt.
Even on the evidentiary facts recited in the majority opinion, the first element of justification under section 35.20 (3) was certainly established. Defendant was given express permission by Tanisha Brewster to return to her dwelling to retrieve his Walkman cassette player. When he arrived at her apartment, he was invited in by Brewster. There was no evidence whatsoever that defendant was asked to leave before the fatal shooting of Eric Copeland. Thus, defendant was a person "licensed or privileged to be in" the Brewster apartment during the entire incident (Penal Law § 35.20 [3]).
Likewise, it would hardly have been unreasonable for defendant to have believed that Copeland was in the course of the commission of a burglary while in Brewster's apartment. That is, the facts permitted the inference that Copeland "knowingly enter or remain unlawfully in with intent to commit a crime therein" (Penal Law § 140.20 [defining burglary in the third degree]). Copeland forced his way into the apartment after concealing himself in the hallway, when Brewster opened the door to let in her girlfriend Paschell Petty. Brewster repeatedly told Copeland to leave, but he persisted in searching through the apartment for the suspected presence of another man. Earlier that afternoon, upon being denied entry by Brewster, Copeland kicked in the apartment door and committed an assault against defendant merely because defendant was in his girlfriend's apartment. Then, on his second forced intrusion, when Brewster attempted to restrain him from entering the bedroom where defendant was hiding, he kicked her out of the way, causing her to fall.
Unarguably, Copeland had entered and remained unlawfully in the Brewster apartment. Taking into account Copeland's earlier assaultive behavior in reaction to defendant's presence, the brute force and subterfuge he used to enter the apartment a second time because of his suspicions that Brewster was entertaining a male guest, and his assault on Brewster when she attempted to restrain him, the evidence established an amply sufficient basis for defendant's reasonable belief that Copeland's unlawful entry and continued presence was accompanied by an intent to commit the crime of assault against him or Brewster, or both. The majority does not contest this, *1007 although the trial court had erroneously based its refusal to charge justification under Penal Law § 35.20 (3) on the ground that even if there was a criminal trespass, "which is the most this is * * * we certainly don't have a burglary" and, therefore, deadly force to terminate it was not lawfully justified.
Thus, the dispositive issue on this appeal is whether there was evidence to support a reasonable belief on defendant's part that deadly force was necessary to terminate Copeland's burglary, under the circumstances. To be sure, determining defendant's reasonable belief requires the application of an objective standard to assess whether the actor was justified in the belief that deadly force was necessary to end the burglary (see, People v Goetz, 68 N.Y.2d 96, 111-113). Nonetheless, the reasonableness of the belief in the necessity for deadly force to stop commission of the burglary is measured by the particular circumstances of the actor and of the situation confronting the actor. Thus, in Goetz, we held that circumstances facing a defendant:
"include any relevant knowledge the defendant had about the person. They also necessarily bring in the physical attributes of all persons involved, including the defendant. Furthermore, the defendant's circumstances encompass any prior experiences he had which could provide a reasonable basis for a belief that another person's intentions were to injure or rob him or that the use of deadly force was necessary under the circumstances." (People v Goetz, 68 NY2d, at 114, supra.)
The justification defense to prevent or terminate a burglary under Penal Law § 35.20 (3) was intended to liberalize justification in support of a dwelling occupant's decision to use deadly force in response to a burglary.
"The final bill, however, altered this provision to an even greater extent in favor of the occupant. In brief, it does not even require a fear on his part of any physical force by the burglar but permits him to shoot the latter whenever he believes such to be necessary or to prevent or terminate the burglary" (Seventh Interim Report of Temp St Commn on Rev of Penal Law and Crim Code, 1968 Legis Doc, No. 29, at 9).
On our reading of the record, there clearly was a reasonable view of the evidence that would permit a factual finding that *1008 defendant had a reasonable belief that deadly force was necessary to terminate Copeland's burglary. All of the circumstantial factors identified in People v Goetz (supra) (relevant knowledge the defendant had about the other person, the physical attributes of the persons involved and prior experiences a defendant had with the other person) support this defendant's reasonable belief in the necessity of deadly force. Several months earlier, a friend told defendant of a prior incident in which Copeland had attacked him in a jealous rage over another girl, wielding a beer bottle as a weapon, and persisted in the assault despite receiving multiple stabbings, until the police intervened. Copeland outweighed defendant by over 100 pounds and his physical advantage was such that it was at least a jury question as to whether it would have been reasonable for defendant to believe that he could not have subdued Copeland by ordinary physical force. Defendant also had the immediate memory of his prior experience with Copeland that day in which he had been the victim of Copeland's entirely unprovoked assault.
Moreover, additional factors in the record would have supported a jury's inference that defendant's belief in the necessity of shooting Copeland to end the burglary was reasonable. Defendant knew that Copeland was defying Brewster's screams that he leave and that Copeland responded to her attempt to physically restrain him by kicking her so violently that she was knocked down into an adjoining bedroom. Apparently, the hostile, verbal and physical confrontation in the apartment had escalated to such a level that neighbors were prompted to place two 911 calls to the police, coded "calls for help" and "assault in progress." From the record it appears that not more than a few minutes elapsed between Copeland's forced entrance, his progress to the back bedroom where he argued with Brewster, and his assault upon her in entering the bedroom that defendant was occupying. Although Copeland and defendant argued for approximately 15 minutes thereafter, it is not apparent what alternative, less lethal options were available to defendant after Copeland discovered him in Brewster's bedroom. Indeed, once Copeland entered the small bedroom, his physical presence blocked defendant's ability either to escape or to seek outside assistance to terminate the burglary. Finally, defendant could readily have perceived that Copeland was totally enraged at discovering him and Brewster's evident lies. It was at that point that Copeland taunted defendant by daring him to shoot, which defendant could reasonably *1009 have taken to mean that Copeland was not to be deterred or induced to end the burglary by any other means.
Because a reasonable view of the evidence would have permitted a jury to decide that defendant's actions were justified under Penal Law § 35.20 (3), we would reverse and order a new trial.
Order affirmed in a memorandum.